**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSCAOLA DIVISION**

**HILAND PARK UNITED**
**PENTECOSTAL CHURCH,**

      **Plaintiff,**

**v.**                              **CASE NO. 5:19cv194-MCR-MJF**

**GUIDEONE ELITE INSURANCE**
**COMPANY,**

      **Defendant.**
_____/

**FIRST PENTECOSTAL CHURCH**
**OF PANAMA CITY, INC.,**

      **Plaintiff,**

**v.**                              **CASE NO. 5:19cv196-MCR-MJF**

**GUIDEONE ELITE INSURANCE**
**COMPANY,**

      **Defendant.**
_____/

## ORDER

This consolidated action involves an insurance coverage dispute arising from property damage caused by Hurricane Michael. At all times relevant to the instant case, Hiland and First Pentecostal owned certain real and personal properties located in Panama City, Florida (the "Subject Properties"). GuideOne issued commercial

property insurance policies that covered the Subject Properties (the "Policies"). *See* ECF No. 21-1 (First Pentecostal policy); ECF No. 21-2 (Hiland policy). The Policies, which were in effect when Hurricane Michael struck, contain an identical Windstorm or Hail Exclusion endorsement, which states, in relevant part:

**WINDSTORM OR HAIL**

We will not pay for loss or damage:

1. Caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage; or

2. Caused by rain, snow, sand or dust, whether driven by wind or not, if that loss or damage would not have occurred but for the Windstorm or Hail.

But if Windstorm or Hail results in a cause of loss other than rain, snow, sand or dust, and that resulting cause of loss is a Covered Cause of Loss, we will pay for the loss or damage caused by such Covered Cause of Loss.

ECF No. 21-1 at 84; ECF No. 21-2 at 79.

Plaintiffs made claims with GuideOne for the damage to the Subject Properties caused by Hurricane Michael. GuideOne denied coverage for the claims due to the Policies' Windstorm or Hail Exclusion endorsements. As a result, Plaintiffs filed separate lawsuits against GuideOne in state court seeking declaratory relief to, namely, resolve whether the Policies cover the damage caused to the

Subject Properties by Hurricane Michael. GuideOne removed the two actions to this Court, at which point they were consolidated.  Cross-motions for summary judgment are pending.

Cross-motions for summary judgment are examined under the same legal standard that applies when only one party files a motion. *See Torres v. Rock & River Food Inc.*, 244 F. Supp. 3d 1320, 1327 (S.D. Fla. 2016) (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)).[1] Summary judgment is appropriate where there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[1] "Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts." *Certain Underwriters at Lloyds, London Subscribing to Policy No. SA 10092-11581 v. Waveblast Watersports, Inc.*, 80 F. Supp. 3d 1311, 1316 (S.D. Fla. 2015); *see United States v. Oakley*, 744 F.2d 1553, 1555–56 (11th Cir. 1984).

CASE NO. 5:19cv194-MCR-MJF

The burden of demonstrating the absence of a genuine dispute of material fact rests with the moving party. *Celotex*, 477 U.S. at 323. In determining whether the moving party has carried its burden, a court must view the evidence and factual inferences drawn therefrom in the light most favorable to the non-moving party. *Liberty Lobby*, 477 U.S. at 255; *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). "Summary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicability of the insurance policy, the construction and effect of which is a matter of law." *IDC Const., LLC v. Admiral Ins. Co.*, 339 F. Supp. 2d 1342, 1348 (S.D. Fla. 2004) (quoting *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1358 (M.D. Fla. 2001)).

The central question is whether the Policies extend coverage to hurricane damage or whether hurricane damage is excluded from coverage under the Policies' Windstorm or Hail Exclusion endorsements. Resolution of this question turns on whether the meaning of the term "windstorm," as used in the Windstorm or Hail Exclusion endorsements, is ambiguous. For the following reasons, the Court finds the term "windstorm" unambiguous, and thus applies its plain meaning to conclude that the Windstorm or Hail Exclusion endorsements bar insurance coverage for damage to the Subject Properties caused by Hurricane Michael.

"Under Florida law,[2] interpretation of an insurance contract, including determination and resolution of ambiguity, is a question of law to be decided by the court." *Mama Jo's Inc. v. Sparta Ins. Co.*, --- F. App'x ---, 2020 WL 4782369, at *8 (11th Cir. Aug. 18, 2020) (citing *Dahl-Eimers v. Mut. of Omaha Life Ins. Co.*, 986 F.2d 1379, 1381 (11th Cir. 1993)). Insurance contracts are construed according to their plain meaning. *Port Consolidated, Inc.*, 2020 WL 5372281, at *3. The court must look at the policy as a whole and give every provision its full meaning and operative effect. *Id.* If the insurance policy's plain language is unambiguous, it governs. *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1186 (11th Cir. 2002). If, however, the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage, the insurance policy is considered ambiguous. *Id.* If the insurance policy is ambiguous, the ambiguity must be construed against the drafter of the policy and in favor of coverage. *Id.*

---

2 As this diversity action was initiated in Florida, the Court applies the substantive law of Florida. *Port Consolidated, Inc. v. Int'l Ins. Co. of Hannover, PLC*, --- F. App'x ---, 2020 WL 5372281, at *3 n.2 (11th Cir. Sept. 8, 2020). Under Florida law, "the law of the state where an insurance contract is executed is the law that 'governs the rights and liabilities of the parties in determining an issue of insurance coverage.'" *Rando v. Gov't Emp. Ins. Co.*, 39 So. 3d 244, 247 (Fla. 2010) (citation omitted). In this case, there is no dispute that the Policies were issued and executed in Florida.

Where, as here, the parties dispute coverage under an "all-risks" insurance policy, a burden-shifting framework applies. The party seeking to recover under the policy bears the initial burden to prove that the insured property suffered a loss while the policy was in effect. *S.O. Beach Corp. v. Great Am. Ins. Co. of N.Y.*, 791 F. App'x 106, 109 (11th Cir. 2019) (citing *Jones v. Federated Nat'l Ins. Co.*, 235 So. 3d 936, 941 (Fla. 4th DCA 2018)). The burden then shifts to the insurer to prove that the loss arose from a cause which is excluded under the policy's terms. *Id.* If the insurer carries that burden, then the insured must prove that an exception to that exclusion applies. *Id.* (citing *Fla. Windstorm Underwriting v. Gajwani*, 934 So. 2d 501, 506 (Fla. 3d DCA 2005)).

Here, there is no dispute that the Subject Properties suffered damage due to Hurricane Michael while the Policies were in effect. GuideOne, therefore, has the burden to prove that the losses caused by Hurricane Michael are excepted.  To meet this burden, GuideOne cites the Windstorm or Hail Exclusion endorsements, which expressly exclude coverage for loss or damage caused by a "[w]indstorm."  Plaintiffs argue in response that the meaning of the term "windstorm" is ambiguous because the Policies refer to the term "hurricane" separately and independently from the term "windstorm." The Court is not persuaded because the provisions of the Policies cited by Plaintiffs do not support their argument.

CASE NO. 5:19cv194-MCR-MJF

First, Plaintiffs cite to the definition of "hurricane" and use of the phrase "hurricane or windstorm" in a portion of the Policies that, by its plain terms, applies only to "a policy covering a residential structure or its contents." *See* ECF No. 21-1 at 23–24; ECF No. 21-2 at 20–21. The Policies in question are commercial property insurance policies. This definition of "hurricane" is therefore inapplicable to the Windstorm or Hail Exclusion endorsements and does not create ambiguity as to the meaning of the term "windstorm." *Cf. Port Consolidated*, 2020 WL 5372281, at *4 ("Determining that specific definitions of 'occurrence' within certain supplemental coverages govern the entire Policy would render the absence of 'occurrence' from the core Policy's general definitions section meaningless.").

Second, Plaintiffs point to an "Important Notice" contained in the Policies that states, "**HURRICANE OR WIND RESTRICTIONS APPLY TO YOUR COMMERCIAL POLICY -- PLEASE READ YOUR POLICY CAREFULLY.**" ECF No. 21-1 at 8; ECF No. 21-2 at 5. This provision does not render the Windstorm or Hail Exclusion endorsements ambiguous because, contrary to Plaintiffs' characterization, it does not reference a "windstorm."

Finally, Plaintiffs cite to the following provision:

H. The following provisions are added to the **Duties In the Event of Loss Or Damage** Loss Condition:

**(1)** A claim, supplemental claim or reopened claim for loss or damage caused by a hurricane or other windstorm is barred unless notice of claim is given to us in accordance with the terms of this policy within three years after the hurricane first made landfall or a windstorm other than a hurricane caused the covered damage. (Supplemental claim or reopened claim means an additional claim for recovery from us or losses from the same hurricane or other windstorm which we have previously adjusted pursuant to the initial claim.)

ECF No. 21-1 at 89 (underline added); ECF No. 21-2 at 82. It is unclear why Plaintiffs emphasize this provision. By its plain language, a "hurricane" is a "windstorm." As GuideOne correctly states, "all hurricanes are windstorms, but not all windstorms are hurricanes." ECF No. 25 at 21.

While it is true, as Plaintiffs point out, that the Policies do not define the term "windstorm," "[t]he failure to define a term involving coverage does not necessarily render the term ambiguous," and an undefined coverage term should be given its plain and ordinary meaning. *Port Consolidated, Inc.*, 2020 WL 5372281, at *3, *4 (citation omitted). In the absence of a specific definition or limitation in an insurance policy, courts have defined the term "windstorm" to mean "a wind of sufficient violence to be capable of damaging insured property either by impact of its own force or by projecting some object against the property." *Kemp v. Am. Universal Ins.*

*Co.*, 391 F.2d 533, 534 (5th Cir. 1968).[3] Moreover, courts across the Gulf Coast have consistently recognized that a hurricane is a windstorm. *See, e.g.*, *Landmark Am. Ins. Co. v. Scd Mem'l Place II, LLC*, No. H-19-0838, 2020 WL 4043638, at *2, *3 n.1 (S.D. Tex. Apr. 14, 2020) (concluding "a hurricane is, without question, a type of windstorm" and collecting cases), *report and recommendation adopted*, 2020 WL 4041488 (S.D. Tex. July 17, 2020); *New S. Commc'ns, Inc. v. Houston Cas. Co.*, 396 F. Supp. 3d 1089, 1100 (S.D. Fla. 2019) ("The Policy defines 'named perils' to include 'windstorm,' which encompasses Hurricane Irma."); *cf. RTG Furniture Corp. v. Indus. Risk Insurers*, 616 F. Supp. 2d 1258, 1259 (S.D. Fla. 2008) (finding that insurance policy "d[id] not specifically exclude 'windstorms,' and hence cover[ed] loss and damage resulting from the peril of windstorms, including hurricanes"); *see also State Farm Fire & Cas. Co. v. Goldstein*, 674 So. 2d 880, 881 (Fla. 3d DCA 1996) (describing Hurricane Andrew as "the ultimate windstorm"); *Underwriters Ins. Co. v. Groner*, 314 F.2d 338, 339 (5th Cir. 1963) (affirming judgment where the parties conducted trial on the assumption that a hurricane occurred on the night the insured property was destroyed because "there was

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit decided prior to October 1, 1981.

CASE NO. 5:19cv194-MCR-MJF

sufficient evidence submitted to the jury to warrant its finding that the damage was occasioned by a windstorm") (applying Florida law). By its plain meaning, then, the term "windstorm," as used in the Policies' Wind or Hail Exclusion endorsements, includes hurricanes, which are storms defined by the speed of their maximum sustained winds.[4] Consequently, the Policies exclude coverage for the damage caused to the Subject Properties by Hurricane Michael.[5]

In short, the term "windstorm" as used in the Policies' Windstorm or Hail Exclusion endorsements unambiguously encompasses hurricanes. Thus, the Policies exclude coverage for the damage caused to the Subject Properties by Hurricane Michael. Plaintiffs do not offer any evidence to support an exception to the unambiguous exclusion in the Policies. Accordingly, GuideOne's Motion for Final

---

[4] *See* NOAA, *What is a hurricane?*, (last updated June 25, 2018), https://oceanservice.noaa.gov/facts/hurricane.html ("When the maximum sustained winds of a tropical storm reach 74 miles per hour, it's called a hurricane."). Hurricane Michael was a Category 5 hurricane when it struck Bay County, Florida, with maximum sustained winds of 160 miles per hour. *See* NOAA, *Hurricane Michael upgraded to a Category 5 at time of U.S. landfall*, (Apr. 19, 2019), https://www.noaa.gov/media-release/hurricane-michael-upgraded-to-category-5-at-time-of-us-landfall.

[5] Because the Court finds the Policies are unambiguous, the Court does not resort to extrinsic evidence to construe their terms. *See Diamond State Ins. Co. v. His House, Inc.*, No. 10-20039, 2011 WL 146837, at *2 (S.D. Fla. Jan. 18, 2011) (citing *Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)).

Summary Judgment, ECF No. 26, is **GRANTED**. Plaintiffs' Motion for Final

Summary Judgment, ECF No. 21, is **DENIED**.[6]

GuideOne moves for sanctions against Plaintiffs and their counsel pursuant to

Rule 11. ECF Nos. 27, 28. GuideOne argues that sanctions are warranted because

Plaintiffs' claims and legal contentions are based on the frivolous position that the

meaning of the term "windstorm" is ambiguous under the Policies and therefore

must have been asserted for the improper purpose of harassing GuideOne.  In

response, Plaintiffs insist that they reasonably believed the Policies were ambiguous

on this point and their request for declaratory relief to resolve this ambiguity was

therefore appropriate. ECF Nos. 31 & 33.  The Court agrees.

The standard for determining whether conduct is sanctionable under Rule 11

is "reasonableness under the circumstances." *Fox v. Acadia State Bank*, 937 F.2d

1566, 1569 (11th Cir. 1991). "[T]he central issue in evaluating reasonableness is

whether a pleading states a colorable claim, not whether the pleader is ultimately

correct in his interpretation of the facts and applicable law." *Contender Fishing*

*Team, LLC v. City of Miami*, No. 08-22268-CIV, 2011 WL 13266817, at *4 (S.D.

---

[6] The Order need not address the motions relating to the scope of the evidentiary record, given that the undersigned did not need to consider, and thus did not consider, any of the materials referenced in the motions in deciding the summary judgment motions.

Fla. July 13, 2011), *report and recommendation adopted*, 2011 WL 13266818 (S.D. Fla. Aug. 18, 2011).

The Policies do not define the term "windstorm" and, as confirmed by the parties' briefing and the Court's independent research, "there is no definitiveness to any commonly accepted definition of 'windstorm.' " *See Landmark Am. Ins. Co.*, 2020 WL 4043638, at *2. Plaintiffs reasonably relied on Florida law's requirement that an ambiguous insurance contract prepared by the insurer must be construed in favor of coverage to argue that the Policies did not exclude coverage for damage caused by hurricanes. While the Court ultimately concluded the meaning of "windstorm" unambiguously includes hurricanes, this does not in turn mean that the Plaintiffs' position was unreasonable under the circumstances. GuideOne's Motions for Sanctions Pursuant to Rule 11, ECF Nos. 27 & 28, are therefore **DENIED**.

Accordingly,

1. GuideOne's Motion in Limine, ECF No. 20, is **DENIED as moot**;

2. Plaintiffs' Motion for Judicial Notice, ECF No. 23, and Amended Motion for Judicial Notice, ECF No. 43, are **DENIED as moot**;

3. GuideOne's Motion for Leave to File a Reply to Plaintiffs' Joint Revised Response in Opposition to GuideOne's Motions for Sanctions, or Alternative Motion for Judicial Notice, ECF No. 35, is **DENIED as moot.**

4. Plaintiffs' Motion to Strike Affidavit of Richard C. Miller, ECF No. 38, is **DENIED as moot**.

5. GuideOne's Motions for Sanctions Pursuant to Rule 11, ECF Nos. 27 & 28, are **DENIED**.

6. Plaintiffs' Motion for Final Summary Judgment, ECF No. 21, is **DENIED**.

7. GuideOne's Motion for Final Summary Judgment, ECF No. 26, is **GRANTED**.

8. The Clerk is directed to enter final judgment in favor of Defendant and against Plaintiffs, with costs taxed against Plaintiffs, and close the file.

**DONE AND ORDERED** this 15th day of September 2020.

*M. Casey Rodgers*
_____

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**